PETRA COLÓN VILLEGAS ET AL., Plaintiffs and Appellees, *v.* WHITE STAR BUS LINE, INC., Defendant, and THE PORTO RICAN AND AMERICAN INSURANCE Co., Appellant.

No. 8730. Argued November 17, 1943.—Decided March 31, 1944.

*Brown, González & Newsom* and *Carlos J. Faure* for appellant. *Mariano Acosta Velarde* and *Federico Acosta Velarde* for appellees.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

Regina Villegas Figueroa lost her life as a consequence of injuries sustained in a collision between a street car of the Porto Rico Railway Light and Power Co. and a bus belonging to the White Star Bus Line, Inc. in which she was riding as a passenger. An action was brought against the White Star Bus Line, Inc. by the heirs of the deceased, and the District Court of San Juan rendered judgment on June 25, 1941, ordering the defendant corporation to pay the sum of $4,000.

In view of the fact that the defendant corporation did not pay the judgment rendered against it, the plaintiffs filed a "Motion to Summon Sureties," wherein they prayed for an order requiring the Porto Rican and American Insurance Co. to appear and show cause why they should not be bound, as surety of the White Star Bus Line, Inc., to pay the judgment. The order was issued and the Porto Rican and American Insurance Co. answered, opposing the petition of the plaintiffs. The parties were heard on the questions raised and the surety, The Porto Rican and American Insurance Co., agreed that its liability be determined within the suit and by the proceeding of "summons of the surety" used by the plaintiffs and that the matter be submitted to the consideration of the court on a stipulation of facts. The court by an order of March 23, 1943, granted the "Motion to Sum-

·mon the Sureties," and after deciding that the Porto Rican and American Insurance Co. was bound to pay the judgment entered in the action against the White Star Bus Line, Inc., by reason of the bond which it had furnished before the Public Service Commission at the time of the accident which .gave rise to this suit, ordered said surety company to pay to the plaintiffs the amount of the judgment.

Feeling aggrieved by this order, the Porto Rican and American Insurance Co. took the present appeal to this court.

The facts, as stipulated by the parties, are, in brief, as follows:

On July 11, 1937, at the time of the accident the White Star Bus Line, Inc., was a public service company engaged in the transportation of ,passengers within and, between the Municipalities of San Juan and Río Piedras, which had been authorized to render such service by franchise No. 586 of April 12, 1927. Paragraph 11 of said franchise reads as follows:

"Section 11.—Before entering upon the powers and duties of this franchise, the grantee shall provide a good and suitable surety bond as and additional security, issued by a casualty company legally authorized to do this class of business in Porto Rico, which bond shall be conditioned to respond for any final judgment rendered in · a competent court in favor of any person who suffers damage to his person or interests or to his heirs in case of his death by reason of the maintenance or use of any bus of the grantee operated hereunder as a public carrier. Said bond shall be in a sum not less than fifty thousand (50,000) dollars, and shall be subject to the approval of the Public Service Commission, after examination by the Attorney General of Porto Rico as to form and execution. After its approval by the Public Service Commission, said bond shall be filed by the Secretary of said Commission.

"The Public Service Commission of Porto Rico reserves the right at any time to require a new bond and to fix the amount and conditions thereof, after hearing the grantee."

The bond furnished by the Porto Rican and American Insurance Co., at the request of the White Star Bus Line, Inc., provides in its dispositive part thus:

"Therefore, we, 'White Star Bus Line, Inc.,' as principal, and 'The Porto Rican and American Insurance Co.,' a corporation organized under the laws of Puerto Rico, with its main office in San Juan, Puerto Rico, as surety, constitute ourselves, the former as such principal and the latter as surety, jointly and severally in favor of any person and we bind ourselves to pay up to the limit of $25,000, any compensation awarded by a competent court in a final judgment, for damages in his person or property or to his heirs in case of death, by reason of any accident due to the use of any of the motor vehicles mentioned in the license granted by the Hon. Public Service Commission for the transportation of passengers between San Juan and Río Piedras and between any other point within these two municipalities, as well as by reason of injuries or damages caused by any vehicle of the 'White Star Bus Line, Inc.' and used for the service or inspection of the vehicles engaged in the transportation of passengers; excluding the injuries, or damages, sustained by the chauffeurs, collectors, inspectors and/or any other employee used by the 'White Star Bus Line, Inc.' in said service of transportation, care, or inspection of said vehicles."

This bond was approved by the Public Service Commission on July 26, 1928, and at the time of the accident the same was in force.

The Porto Rican and American Insurance Co. contends that it is not liable for the judgment rendered against the White Bus Line, Inc., inasmuch as under the terms of the bond it is an indispensable requisite or condition precedent that a final judgment be rendered before any liability shall arise on the part of surety; and that in the case at bar the judgment of the court as well as that of the District Court of San Juan were rendered subsequent to July 11, 1938, on which date the bond was officially cancelled by the Public Service Commission. The surety further alleges that in the event that it were liable under the terms of the bond mentioned, no action lies against it until the plaintiffs proceed

to execute the judgment on the property of the defendant and to levy on defendant's property; and that in the event that the surety were further liable for the judgment rendered in the present case, its liability would only extend to 50 per cent of the total amount, inasmuch as it was expressly stipulated so in the bond, the penultimate paragraph of which reads as follows:

"It is expressly stipulated that the Maryland Casualty Company of Baltimore, has issued, through its authorized agents in Puerto Rico, another bond for $25,000 (Twenty-five thousand dollars) for the same purpose and of the same nature as this document, and therefore any judgment, compensation or award of any kind by reason of injuries, or damages caused to any person who pursuant to and within the terms of law may, or should be entitled to, bring an action to recover from the Principal in this document, such claim, compensation or award, together with all the expenses and/or fees incurred or that might be incurred, shall be paid in proportion by each of the companies mentioned."

The surety maintains that the suretyship contract on which the plaintiffs ground their claim was made between said surety company and the White Star Bus Line, Inc., subject to the condition that a similar suretyship contract be issued and maintained in force between said White Star Bus Line, Inc., and the Maryland Casualty Company and that said condition was violated and the Porto Rican and American Insurance Co. was relieved of all responsibility under said contract by reason of said violation because prior to the date of the accident which gave rise to the claim of the plaintiffs, the contract between the White Star Bus Line, Inc., and The Maryland Casualty Co. was canceled without any notice to or consent of The Porto Rican and American Insurance Co., whose suretyship contract thus canceled was not replaced by any other contract.

Nevertheless, before submitting the case to this court, both parties stipulated that upon an examination of the record of the bond furnished by The Maryland Casualty Com-

pany "they realized that the Public Service Commission has never approved an order cancelling said bond pursuant to the provisions of Rule III of the Regulations of the Public Service Commission."

Two errors have been assigned by the appellant as committed by the trial court:

"1. In deciding that the liability of the surety company arose at the time of the accident and not at the time that the judgment rendered in the main action became final.

"2. In deciding that the surety was liable for the entire judgment rendered in favor of the plaintiffs and against the White Star Bus Line, Inc."

 It seems advisable, before entering into a discussion of the errors assigned, to pass upon the nature of the liability of the appellant, surety for the White Star Bus Line, Inc.

The appellant contends that the District Court of San Juan mistakenly held that the relation created by the guarantee was one of insured and insurer and that the guarantee furnished had the character of a liability policy or an insurance policy against liability and that said relation should be governed by the law and by the principles of insurance and not by the Civil Code, but that on the contrary said appellant believes and maintains that the contract in the present case is a suretyship contract and that as such it should be governed by the provisions of the Civil Code in its pertinent part.

The bond required from the White Star Bus Line, Inc., and furnished by The Porto Rican and American Insurance Co. was a surety bond. A surety bond is nothing else than a "fianza." In the English version our Code translates the word "fianza" as security and "fiador" as surety. However, Mr. Justice Fisher of the Supreme Court of the Philippine Islands, in his work "The Civil Code of Spain," translates the word "fianza" as suretyship. The translation

made by Judge Fisher seems to us more accurate than ours, inasmuch as the term "security," as used by our Code, is more general and less specific.

From Corpus Juris, vol. 50 p. 12, §1, we copy the following definition of suretyship:

"The relation of principal and surety or suretyship, in its broadest sense, is the relation occupied by a person liable for the payment of money or for the performance of an act by another, such liability being collateral as to such person, and who is liable to suffer loss in the event of the failure of such other person to pay or perform, but whose liability is terminated at once, fully and completely, if such other person does pay or perform. Suretyship is a lending of credit to aid a principal who has insufficient credit of his own; and is a direct contract to pay the principal's debt or perform his obligation in case of his default, although the surety's obligation is accessorial to that of the principal debtor."

Thus it is but a bond and even though the word "bond" has been translated as "fianza" (see 6 Phil. Digest 71) in effect a bond is more of a formal document. (See 11 C.J.S. 398, §1.)

We are of the opinion therefore that a surety bond is nothing else that a written contract of suretyship (fianza por escrito) executed before a notary. The fact that the bond was furnished by an insurance company, as in the present case, does not change at all the nature of the bond, and even though a bond for a valuable consideration (§1722, of the Civil Code), according to Planiol, is very much like an insurance contract, since "the surety guarantees the creditor against the risk (the insolvency of the debtor) and the sum paid is in fact a premium; . . . this question, "says Manresa in explaining the theory of Planiol" which had a certain interest before, at present has none, since Section 1823 of the Civil Code expressly provides that a bond may be gratuituous or for a valuable consideration." (Manresa, Commentaries on the Civil Code, 1931 ed., vol. 12, pp. 151, 154.)

It having been shown that a surety bond is nothing else than a contract of suretyship, as it has been considered by appellant itself, we decide that the contract in the present case should be governed by the provisions of the Code relating to suretyship, and not by the Insurance Act.

██ We shall first pass upon the second error assigned by the appellant instead of the first, since we believe that it is more logical to discuss first the manner in which the appellant bound itself than the time when its liability arose.

In its second assignment of error, the appellant maintains that the lower court committed error in holding that the Porto Rican and American Insurance Co. was liable for the entire judgment rendered in favor of the plaintiffs in the principal suit against the White Star Bus Line, Inc.

The bond furnished in the case at bar is imposed by law. It is, therefore, a legal bond which is one of the kinds of bonds prescribed by said §1722 of the Civil Code. In the case of *Rondón* v. *Aetna Casualty & Surety Co.* (1940), 56 P.R.R. 418, this court examined the nature of the obligation in this type of bonds as to the liability of the surety, but it seems advisable to distinguish that case from the present one on this point. In that case, the obligation of the surety was the ordinary one between principal and surety, wherein the surety binds himself to answer for the insured in cases of insolvency or bankruptcy of the principal. But in the case at bar the surety, the Porto Rican and American Insurance Co., bound itself jointly with the principal, White Star Bus Line, Inc. An examination of the dispositive part of bond No. 424 above copied reveals that. This situation is anticipated by §1721 of the Civil Code which reads thus:

"Section 1721.—By security a person binds himself to pay or perform for a third person in case the latter should fail to do so.

"If the surety binds himself jointly with the principal debtor, the provisions of article IV, Chapter III, Title I of this Book, shall be observed."

Commenting on §1822 of the Spanish Civil Code, which is equivalent to §1721 of our Code, Manresa states (op. and volume cited, p. 155):

"Notwithstanding the accessorial character of the obligation contracted by the surety, which constitutes one of the fundamental bases of the contract of suretyship in its most common and ordinary form, yet it may forfeit said condition and become a principal obligation, if the surety binds himself *in solidum* with the debtor.

"In effect there exists no legal reason opposed to that; but as in such case a doubt might arise as to whether, notwithstanding the accessorial character peculiar to the bond, it would be proper to demand the fulfillment of the obligation contracted by the surety, or if, on the contrary, the action would necessarily have to be brought against the principal, the lawmaker, anticipating such difficulty, has promptly found a proper solution which serves as the object and legal ground of the provision contained in said second paragraph, which has put an end to the doubts advanced by the writers in their treatises, and to the questions which according to the special interest of the parties were grounded on different theories and on different constructions of our ancient laws upheld by those writers.

"According to this Section, when the surety binds himself *in solidum* with the principal debtor, the provisions of Section 4th, chapter 3, Title I of this book shall be applicable as to the solidary obligations. That is, in such case, the surety is considered as a principal bound *in solidum,* which is the legal character and condition that corresponds to him, and under such circumstances, the action may be brought against him independent of the debtor, or against both simultaneously."

But, since solidarity is not presumed, but should be expressly established (§§1090 and 1091, Civil Code, 1930 ed.) it is required "that the solidary character of the obligation should be expressed, by any of the words such as solidary, *in solidum,* solidarily, with which a grammatical sentence may be formed." (Scaevola, Commentaries on the Civil Code, 1902 ed., vol. XIX, p. 751.). Thus, we reach the conclusion, after an examination of the dispositive part of the bond furnished by the Porto Rican and American Insurance Co., that the latter was solidarily bound, this having been expressly stated in said document.

Therefore, since the surety was solidarily bound, the action for recovery could have been brought either against it or against the White Star Bus Line, Inc., inasmuch as both, in so far as the plaintiffs are concerned, were principal debtors. This question should be governed by the provisions of the Civil Code in so far as it refers to solidary obligations.

The surety in the present case was bound *in solidum* with the White Star Bus Line, and therefore, it is bound to pay plaintiffs' claim in the same manner as was the defendant company in the main action. Therefore, it is not entitled to levy on the property of said defendant §1730 (2), Civil Code) or to have the order of execution of the judgment returned unsatisfied by reason of the debtor's insolvency, as a prerequisite in order that the plaintiffs may bring an action of recovery against the appellant, since it had bound itself *in solidum*.

■ The appellant further contends that the lower court erred in deciding that it was liable for the entire judgment rendered in favor of the plaintiffs and against the White Star Bus Line, Inc.

According to §11 of the franchise, the White Star Bus Line, Inc. was bound to furnish a bond for not less than $50,000 before beginning to operate under said franchise. Said bond was furnished, as already indicated, by two companies, the Porto Rican and American Insurance Co. and the Maryland Casualty Co., each binding itself for the sum of $25,000, as sureties of the White Star Bus Line, Inc., and as it appears from the next to last paragraph of the bond above copied, both companies bound themselves to pay any claim, compensation, or award, etc., which should arise against the principal, share and share alike.

But the fact is that, pursuant to §1097, a creditor may sue any of the debtors *in solidum*, as happens in this case, and, according to §1098, each such debtor is bound to the creditor for the debt in full. Naturally, pursuant to §1725,

the surety may bind himself to less but not to more, than the principal debtor, as to amount as well as to conditions. For these reasons, the Porto Rican American Insurance Co. was not bound to pay an amount greater than $25,000. Now, since the judgment is for $4,000, and since the plaintiffs have sued the Porto Rican American Insurance Co., the latter is bound to pay the claim in full, without prejudice to claiming said payment, either in full from the White Star Bus Line or in case of insolvency of the latter, the proportionate part from the Maryland Casualty Co., which, according to the contract, it was bound to pay. (Sections 1737, 1743, 1098, Civil Code.) Referring to this, Manresa states that "the surety who is bound *in solidum* with the principal · debtor after payment is made, if recovery was sought from him first, may claim from the principal the full amount which he paid for the latter. That is to say, the obligation contracted *in solidum* with the principal debtor does not limit in the least the actions to which he is entitled if the bond had been executed without said promise or obligation." (Manresa, op. cited, vol. XII, p. 159.)

The appellee correctly contends that, since the surety, the Porto Rican and American Insurance Co., had bound itself *in solidum* with the White Star Bus Line, Inc. to answer in cases of judgment against the latter, since the judgment against the defendant in the main action became final, the obligation of the surety arose jointly with that of the public carrier to pay said amount. The plaintiffs understood this to be so and sued said surety for recovery. From the foregoing it clearly appears that the appellant was obliged to pay the entire sum claimed by the plaintiffs.

In the first assignment of error, which we shall now discuss, the lower court is charged with the error of holding that the liability of the surety company, Porto Rican American Insurance Co., began at the time of the accident

and not at the time that the judgment rendered in the main action became final by order of this court.

The bond furnished by the appellant was undoubtedly to secure a future debt, the amount of which was unknown at the time of giving said guaranty for which reason and, according to the provisions of §1724, "no action can be brought against the surety until the debt is determined."

It follows, therefore, that even in the case at bar, wherein the surety was solidary in character, an action could not be brought against it until the debt were determined, that is, until a court fixed the amount to be paid by the White Star Bus Line, Inc., or its surety *in solidum*, the appellant. Naturally, it was not until that moment that an action could be brought against the surety, since before that time there was no judgment which bound the White Star Bus Line, Inc. to pay, nor could the amount for which the surety was liable be determined.

In effect, the only question to be decided herein is when did the obligation of the appellant arise?

Commenting on §1825, of the Spanish Civil Code from which our §1724 is taken, Manresa states (op. and volume cited, p. 194):

" . . . . the bond is always . . . . an accessory contract, and for that reason its existence can not be conceived without a principal obligation to serve as a security and guaranty; but that circumstance exists in the supposition referred to in the above-mentioned section, since there exists an obligation prior or coetaneous to the time of the constitution of the bond, even though the fulfillment or effectiveness thereof should not be for the present, but for the future, and its amount should be unknown due to the fact that its liquidation is left pending."

In effect, the situation is similar in the case at bar. The White Star Bus Line, Inc., was bound to pay for the damages caused in the operation of its franchise, and as a protection to the public it was required by law, as an additional guaranty, to furnish a bond to answer for the judgments

that might be rendered against it. Of course, an indeterminate obligation for an unknown amount was involved, but it was an obligation existing at the time that the bond was constituted.

Now, when did the surety bind itself? Let us go back to Manresa. He says (op. and volume cited, pp. 195, and 196):

"In effect, it is said that when the *obligation is for some future time*, the surety bond is conditional, and therefore, it shall not exist until the condition is fulfilled, that is, until the principal obligation *comes into life*. From this it follows that the surety is not bound until such time, and that in the meantime it may revoke the consent given but under the obligation of notifying the creditor that he changed his mind.

"But of course, it must be admitted that this argument implies a confession[1] of ideas. It is true that the surety who secures a future obligation binds himself under a condition; but this does not affect the subsistence of the legal nexus, as he is liable for a conditional obligation as much as he is for a pure and simple one. If the surety could release himself from the obligation contracted, it would not be accurate to say, as does the law, that the bond for a future debt is valid, because then the obligation, the legal nexus, would depend upon the will of the former if the condition were not fulfilled, and it is well known that *an obligation which depends upon the will of the maker is not such an obligation*. Therefore, if it is accepted that the surety may bind himself for a future obligation, it must be likewise accepted that the surety is bound by said bond, and can not release himself from such obligation except when provided by law and in the manner prescribed therein, as we shall see in our comment on Section 1843.

"It is unquestionable that if no principal obligation exists, there is no bond obligation, inasmuch as the latter can not exist without the former, as accepted by Section 1824, and consequently, the surety who has bound himself for a future debt, shall not be subjet to the consequences resulting from the bond, except when the obligation has como into being. But this proves only one thing, and that is, that if the security of a future debt is a conditional contract, the bond is subordinated from the very beginning to the existence of the obliga-

---

[1] Note: We think it should read "confusion" as it appears this way in the 1911 ed., vol. XII, p. 215.

tion, and this conditional assent can not be revoked, just as the pure and simple consent can not be revoked either.''

The obligation contracted by the appellant was a guaranty for those persons who might bring actions against the White Star Bus Line, Inc. for damages sustained as a result of the operations of the latter because of their franchise. Thus, while no action was brought which could result in a judgment against the bus company for the payment of damages claimed against it, the appellant was not guaranteeing any future obligation and could at any time recall its guarantee. But when an action was brought, especially in the case of an obligation *in solidum*, the appellant guaranteed to the plaintiff the payment of the judgment that might be rendered against the defendant. From that time it was bound for the future obligation which it had contracted and it could not recall its guarantee. For all purposes, the global bond furnished by the appellant had the same effect as if each time that an action were brought against the White Star Bus Line, Inc., the appellant had furnished a bond to secure the payment of a judgment adverse to the public carrier company. Thus, its future or conditional obligation was born at the time an action was begun against the principal, and from that time it could not withdraw its consent.

In the case at bar, when the surety revoked its bond, it did so in a global sense, that is, the revocation was effective as to the actions brought after said bond was revoked, but not so as to those actions brought prior to said revocation, and that liability should subsist until said actions are terminated by final judgment of the court or by prescription.

In the present case, the obligation of the surety began at the time of the accident and it shall not cease until the judgment entered against the public carrier company and for the plaintiffs is paid. For the reasons stated, we are of the opinion that the Porto Rican and American Insurance

346

Co. is bound to pay the sum claimed by the plaintiffs, without prejudice to any action that it might later bring against the White Star Bus Line, Inc., or the Maryland Casualty Co. for the recovery of the payment made.

The judgment appealed from should be affirmed.